**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                        CR 13-64 MCA

THOMAS JONES and
TERRENCE CONNORS,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendant *Mr. Connors' Motion to Suppress Stop and Fruits of an Illegal Stop and Search*, filed on June 10, 2013, (Doc. 29); Defendant *Mr. Connors' Motion to Suppress Statement*, filed on June 10, 2013, (Doc. 30); and Defendant *Mr. Jones' Motion for Suppression of Evidence and Incorporated Memorandum*, filed on June 10, 2013, (Doc. 32). On August 30, 2013, the Court held a hearing on Defendants' motions. (Doc. 53). After the hearing, both Defendants and the Government submitted *Proposed Findings of Fact and Conclusions of Law* to the Court. (Docs. 57, 60, 61).

### I.    Background

In December 2012, a confidential informant provided information about a source of supply of methamphetamine to Region II Narcotics Task Force Officer Devin Verhulst. (Tr. at 5-6).[1] The confidential informant told Officer Verhulst that an individual with the initials "T.C." was based in Albuquerque and was a supplier of methamphetamine. (Tr. at 5-6). He also provided information regarding T.C.'s residence, phone number, and

---

[1] References to "Tr." are to the transcript from the Evidentiary Hearing. (Doc. 56).

1

vehicle.  (Tr. at 6).  Using that information, Officer Verhulst was able to identify T.C. as Terrence Connors.  (Tr. at 7).  In a photo lineup, the confidential informant identified Defendant Connors as T.C.; Officer Verhulst was also able to confirm that the phone number the confidential informant said was T.C.'s actually belonged to Defendant Connors.  (Tr. at 6-7).

Officer Verhulst recorded a conversation between the confidential informant and Defendant Connors.  (Government Exhibit 5).  During this conversation, the confidential informant and Defendant Connors discussed Defendant Connors' plans to obtain methamphetamine.  (Tr. at 14-15; Government Exhibit 5).  Based on that discussion, Officer Verhulst believed that Defendant Connors would be driving to Phoenix to obtain the methamphetamine.  (Tr. at 14-15).  The confidential informant also participated in a controlled buy of methamphetamine from Defendant Connors in Cuba, New Mexico on December 12, 2012.  (Tr. at 15).  The controlled buy was observed by several officers from the Region II Task Force and agents from Homeland Security Investigations; it was also recorded by the confidential informant.  (Tr. at 15-20, 62-63).  Homeland Security Agent Chris Martin followed Defendant Connors to and from the location of the controlled buy.  (Tr. at 62-63).

Officer Verhulst obtained GPS tracker and cell site warrants for Defendant Connors' vehicle and cell phone.  (Tr. at 20).  Using the information from the GPS tracker, Homeland Security Investigations Agent Abbey Kepf discovered that Defendant Connors drove to the Albuquerque airport.  (Tr. at 87-89).  After some investigation, Agent Kepf discovered that Defendant Connors had rented a vehicle from Thrifty Car Rental; Defendant Jones was listed as an alternate driver of the rental car.  (Tr. at

88-89). The cell site information revealed that Defendant Connors had traveled to the Phoenix, Arizona area. (Tr. at 89).

On December 17, 2012, an arrest warrant for Defendant Connors was obtained; the warrant authorized the arrest of Defendant Connors anywhere in New Mexico for trafficking a controlled substance (methamphetamine). (Doc. 38-1 at 5). Region II officers and Homeland Security agents planned to stop Defendant Connors near Gallup, New Mexico, on Interstate 40 between Phoenix and Albuquerque. (Tr. at 21, 63-64, 91-92). At a briefing on December 17, 2012, the participants in the operation were informed that a felony arrest warrant had been issued for Defendant Connors and that he may have been carrying a weapon. (Tr. at 65, 83).

Between 10:00 p.m. and 11:00 p.m. on December 17, 2012, Agent Martin participated in a traffic stop of Defendants' rental vehicle. (Tr. at 64-65). Defendant Jones was ordered out of the vehicle, told to walk backwards towards the agents, patted down, and handcuffed. (Tr. at 65-66). Defendant Connors was then ordered out of the vehicle and arrested in the same manner. (Tr. at 66). The agents observed drug paraphernalia inside the vehicle before searching it. (Tr. at 67). After Defendants Connors and Jones were taken to the police station in Gallup, a dog trained to detect narcotics was deployed on the rental car. (Tr. at 68, 111). The dog alerted to luggage in the vehicle, which the agents searched and found a substance that tested positive for methamphetamine, drug paraphernalia, and a loaded pistol. (Tr. at 68-69).

Defendants Connors and Jones were individually interviewed at the police station in Gallup. (Tr. at 93, 126-27). Homeland Security Investigations Special Agent John Dennis interviewed Defendant Jones while Agents Kepf and Homeland Security

3

Investigations Agent Brital interviewed Defendant Connors.  (Tr. at 93, 119, 126).  Both Defendants were read their *Miranda* rights before the interviews began; each defendant initialed a copy of the *Miranda* warning.  (Tr. at 94, 126-27; Government Exhibits 2, 4). The interviews lasted approximately an hour and a half.  (Tr. at 103, 130).  Defendant Connors told Agent Kepf that he had scales, firearms, ammunition, and pipes in his apartment.  (Tr. at 113).

After the interviews, both defendants were transported back to Albuquerque.  (Tr. at 70, 103).  In Albuquerque, Agent Martin asked Defendant Connors what evidence might be found in his apartment.  (Tr. at 77-78).  Agent Martin also filled out the necessary forms for a search warrant, though Defendant Connors was unaware that a search warrant was being prepared.  (Tr. at 70, 134).  Defendant Connors expressed concern for his dog, who was alone in his apartment.  (Tr. at 71).  After obtaining consent from Defendant Connors to search his apartment, agents took Defendant Connors with them to search his apartment. (Tr. at 71-72).  While agents searched his apartment, Defendant Connors was able to sit with his dog; he was also able to call someone to come take the dog.  (Tr. at 71-72).

Agents found narcotics and weapons in the apartment.  (Tr. at 71).  Defendant Jones was charged with conspiring to possess 500 grams and more of a mixture and substance containing methamphetamine with intent to distribute it in violation of 21 U.S.C. § 846 and possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  (Doc. 2).  Defendant Connors was charged with the same violations of 21 U.S.C. §§ 841 and 846 as Defendant Jones, as well as knowingly carrying a firearm

during and in relation to a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (Doc. 11). After Defendants filed their Motions to Suppress and Motions for Disclosure Of and Information About Confidential Informant, (Docs. 29, 30, 31, 32, 33), the Court held an evidentiary hearing. At the hearing, the Government stipulated that the confidential informant is "completely unreliable, has a criminal record a mile long, and is not deserving of trust." (Doc. 53 at 3). As a result, Defendants Jones and Connors have each withdrawn their Motions for Disclosure Of and Information About Confidential Informant. (Docs. 49, 54).

## II. Analysis

Defendants Jones and Connors have moved to suppress the evidence found in the rental vehicle as well as the statements they made to the agents during the interrogations that followed the traffic stop. (*See generally*, Docs. 29, 30, 32). Defendants argue that the basis for the traffic stop – the arrest warrant for Defendant Connors – was supported by information from an unreliable confidential informant and therefore, law enforcement lacked probable cause to arrest Defendant Connors. (Doc. 57 at 3; Doc. 60 at 6). Defendants further assert that without probable cause to arrest Defendant Connors, the traffic stop and the subsequent search of the vehicle, were unconstitutional. (Doc. 57 at 3; Doc. 60 at 6-7). Finally, Defendants assert that any statements they made to law enforcement officers following the vehicle stop should be suppressed because they "were secured in violation of the United States Constitution." (Doc. 57 at 3; Doc. 60 at 7). The Government contends that law enforcement had a valid arrest warrant for Defendant Connors, the traffic stop and search of the vehicle were supported by probable cause, and all admissions by Defendants were made voluntarily,

after they received verbal and written explanations of their *Miranda* rights. (Doc. 61 at 9-12).

      *a. Traffic Stop and Vehicle Search*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Probable cause to arrest exists when the "facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Edwards*, 632 F.3d 633, 639 (10th Cir. 2001) (internal quotations omitted). While more than mere suspicion is required, probable cause does not require facts sufficient for a finding of guilt. *See United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001). Probable cause is measured by the objective standard of whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information he or she possessed. *Beck v. State of Ohio*, 379 U.S. 89, 91 (1964); *United States v. Valenzuela*, 365 F. 3d 892, 896-97 (10th Cir. 2004).

The circumstances of this case are sufficient to warrant the belief that Defendant Connors was engaging in criminal activity. Although the confidential informant was unreliable, the agents did not rely solely on the information that the confidential informant gave them. They corroborated the information about Defendant Connors' residence, vehicle, and phone number, and importantly, observed Defendant Connors engage in a drug transaction. All of this information was included in the affidavit in support of the arrest warrant for Defendant Connors. While the confidential informant did play an

6

important role in bringing Defendant Connors to the attention of law enforcement, the officers themselves observed criminal conduct sufficient to provide probable cause for the arrest warrant. Thus the arrest warrant is supported by facts sufficient to demonstrate that Defendant Connors had engaged in criminal activity.

When law enforcement officers have reasonable suspicion that an individual has engaged in past criminal activity, they may stop and question that individual. *United States v. Hensley*, 469 U.S. 221, 227 (1985); *United States v. Cortez*, 449 U.S. 411, 417 n.2 (1981). A lawfully stopped vehicle and the containers therein, may be searched in the absence of a search warrant if there is probable cause to do so. *United States v. Ross*, 456 U.S. 798, 825 (1982). Probable cause exists if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A canine alert provides probable cause to search a car, including the trunk of a car. *United States v. Ludwig*, 10 F. 3d 1523, 1527-28 (10th Cir. 1993).

As discussed above, the law enforcement agents had probable cause to believe that Defendant Connors had engaged in criminal activity. Defendants were lawfully stopped on the basis of the arrest warrant for Defendant Connors. Agent Martin testified that once Defendants were stopped, he observed, in plain view, drug paraphernalia. Agents also had reason to believe, based on the recorded phone conversation, that Defendant Connors had driven to Phoenix to procure methamphetamine. These facts provide probable cause to search the car. Moreover, a canine who sniffed the car indicated that there was contraband in the car. This is sufficient to provide probable cause to search the entire car, including the trunk.

Defendants' argument that the stop and search were unconstitutional comes entirely from their contention that the stop was not based on a valid arrest warrant. (Doc. 57 at 2-4; Doc. 60 at 6-7). They have not offered any independent argument that the subsequent search was unconstitutional. However, the Court finds that both the stop and the search were based on probable cause and Defendants' Fourth Amendment rights were not violated and recommends that their Motions to Suppress evidence seized from the vehicle be denied.

### b. Defendants' Statements

Defendants contend that the statements they made during interviews following the traffic stop were secured in violation of their constitutional rights. (Doc. 57 at 3; Doc. 60 at 7). Defendant Connors points out that the interview took place approximately thirty minutes after he arrived at the Gallup police station, that the interview was not recorded, and that Agent Martin had "an imposing physical presence."[2] (Doc. 60 at 3-5). The Government argues that Defendants voluntarily waived their *Miranda* rights and the statements are admissible. (Doc. 61 at 11-12).

Statements made by a defendant during a custodial interrogation must be suppressed unless the defendant was fully informed of his constitutional rights before questioning began. See *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The

---

[2] In *Mr. Connors' Motion to Suppress Stop and Fruits of an Illegal Stop and Search,* (Doc. 29), and his *Motion to Suppress Statement*, (Doc. 30), Defendant Connors argues that the evidence seized from his apartment should be suppressed. (Doc. 29). Defendant Connors argues that he consented to the search of his apartment only after he was told that he could take care of his dog, and that this consent was "not voluntary, insufficient, and invalid as a matter of law." (Doc. 30 at 3). Although in his Findings of Fact Defendant Connors presents his testimony that he only consented to the search in order to care for his dog, he does not assert any legal argument regarding the suppression of evidence obtained in his apartment. (Doc. 60 at 7). Additionally, the Government indicates that the evidence seized from Defendant Connors' apartment did not result in criminal charges. Therefore, the Court does not address whether Defendant Connors' consent to search his apartment was voluntary.

defendant may waive his rights, but the waiver must be made "voluntarily, knowingly, and intelligently." *Id.* at 444. In order to determine whether the defendant waived his rights voluntarily, knowingly, and intelligently, the court looks at the particular facts and circumstances of the case, "including the background, experience, and conduct of the accused." *United States v. Burson*, 531 F.3d 1254, 1256 (10th Cir. 2008). If the totality of the circumstances of the interrogation reveals that the defendant made an uncoerced choice and had the requisite level of comprehension, a court may conclude that the defendant's *Miranda* rights have been waived. *Id.* (citing *Smith v. Mullin*, 379 F.3d 919, 932-33 (10th Cir. 2004)). An uncoerced choice is one that is free and deliberate and not the product of intimidation, coercion, or deception. *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

At the hearing, agents Kepf, Martin, Brital, and Dennis offered credible testimony regarding the interviews of Defendants, and none the testimony suggested that Defendants were impaired, disproportionately upset or nervous, or confused. Furthermore, the agents' testimony indicated that they properly informed Defendants of their *Miranda* rights in a calm, uncoercive, and non-deceptive manner. Agents read both Defendants their *Miranda* rights and then provided written copies to each Defendant to look over and initial. (Government Exhibits 2, 4).

While Defendant Connors suggests that the time between Defendants' arrival at the police station and the waiver of his rights was inordinately long, the Court does not find that thirty minutes between leaving the scene of the traffic stop and beginning the interview is not unreasonable. Defendant Connors also suggests that Agent Martin, a taller, heavier man, was an imposing physical presence who intimidated Defendant

Connors,[3] but Agent Martin was not present when Defendant Connors waived his *Miranda* rights. Moreover, Agent Martin testified that Defendant Connors was agreeable in his interactions. (Tr. at 81). Although Defendant Connors also points out that the interview was not recorded, there is no legal authority requiring that interviews be recorded and the Court does not find this unreasonable.

Based on the totality of the circumstances, the Court finds that Defendants Jones and Connors voluntarily, knowingly, and intelligently waived their *Miranda* rights and recommends that their Motions to Suppress their statements be denied.

### III.    Recommended Disposition

For the reasons discussed above, the Court **RECOMMENDS** that *Mr. Connors' Motion to Suppress Stop and Fruits of an Illegal Stop and Search*, (Doc. 29); *Mr. Connors' Motion to Suppress Statement*, (Doc. 30); and *Mr. Jones' Motion for Suppression of Evidence and Incorporated Memorandum*, (Doc. 32), be **DENIED**.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

---

[3] Defendant Connors may have raised this point in his Proposed Findings of Fact as relevant to his providing consent to search his apartment, but to the extent he raises it as relevant to his waiver of his Miranda rights and his subsequent admissions, the Court addresses it here.