IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                     CR 13-64 MCA

THOMAS JONES and
TERRENCE CONNORS,

    Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on United States Magistrate Judge Carmen E. Garza's *Proposed Findings and Recommended Disposition* ("PFRD"), filed on October 30, 2013, (Doc. 62); Defendant *Mr. Jones' Objection to Magistrate Judge's Proposed Findings and Recommended Disposition*, filed on November 13, 2013, (Doc. 63); and Defendant *Mr. Connors' Objections to Proposed Findings and Recommended Law*, filed on November 13, 2013, (Doc. 64).   After a *de novo* review of the PFRD, the Objections, and the record, this Court adopts the *Proposed Findings and Recommended Disposition* and overrules Defendants' Objections.

    **I.**    **Background**

The facts of this case are detailed in the PFRD, which the Court incorporates here and which will be briefly repeated here, as needed.   In December 2012, Region II Narcotics Task Force Officer Devin Verhulst received information about a source of supply of methamphetamine from a confidential informant.   (Tr. at 5-6).[1]   After

---

[1] References to "Tr." are to the transcript from the Evidentiary Hearing.   (Doc. 56).

investigating this tip and corroborating much of the identifying information, Officer Verhulst determined that Defendant Connors was the source of supply.  (Tr. at 5-7). Officer Verhulst, along with several other agents, arranged for the confidential source to participate in a recorded, controlled buy of methamphetamine from Defendant Connors, which occurred on December 12, 2012.  (Tr. at 14-20; Government Exhibit 5).

On December 17, 2012, an arrest warrant, based on information provided by the confidential source as well as a description of the controlled buy, was issued for Defendant Connors.  (Doc. 38-1 at 5).  Later that evening, Defendants Jones and Connors were stopped by law enforcement near Gallup, New Mexico, on Interstate 40 between Phoenix and Albuquerque.  (Tr. at 21, 63-64, 91-92).  Defendants Jones and Connors were taken to the police station in Gallup, and a dog trained to detect narcotics was deployed on the vehicle.  (Tr. at 68, 111).  The dog alerted to luggage in the vehicle, which the agents searched and found a substance that tested positive for methamphetamine, drug paraphernalia, and a loaded pistol.  (Tr. at 68-69).

At the police station in Gallup, both Defendants were read their *Miranda* rights before they were interviewed by law enforcement agents; Agent Abby Kepf interviewed Defendant Connors.  (Tr. at 94, 126-27; Government Exhibits 2, 4).   After the interviews, both defendants were transported back to Albuquerque.  (Tr. at 70, 103).  In Albuquerque, Agent Chris Martin asked Defendant Connors what evidence might be found in his apartment.  (Tr. at 77-78).  At that time, Defendant Connors expressed concern for his dog, who was alone in his apartment.  (Tr. at 71).  After obtaining consent from Defendant Connors to search his apartment, agents took Defendant

Connors with them to search his apartment, where narcotics and weapons were found. (Tr. at 71-72).

Defendants filed Motions to Suppress and Motions for Disclosure Of and Information About Confidential Informant, (Docs. 29, 30, 32), and on August 30, 2013, Judge Garza Court held an evidentiary hearing.  At the hearing, the Government stipulated that the confidential informant is "completely unreliable, has a criminal record a mile long, and is not deserving of trust."  (Doc. 53 at 3).  Judge Garza recommended that Defendants' Motions be denied.  (Doc. 62 at 10).

## II. Objections

Defendant Jones objects to Judge Garza's finding that the vehicle search was justified "on the basis of information extrinsic" to the arrest warrant for Defendant Connors.  (Doc. 63 at 1).  Defendant Connors objects to the finding that the traffic stop was based on probable cause; he also reasserts his claim that his statements to Agent Kepf were not made with a voluntary and knowing understanding of his Constitutional rights, and that the consent to search his apartment was given to Agent Martin "under unconscionable duress."  (Doc. 64 at 1).

### A. The Traffic Stop and Vehicle Search

Defendants challenge the constitutional validity of the arrest warrant for Defendant Connors and the resulting traffic stop and search of the vehicle.  (*See* Doc. 63 at 1; Doc. 64 at 1-6).  Defendant Connors objects to Judge Garza's finding that the arrest warrant was based on probable cause, apparently on the basis that the confidential informant's unreliability tainted all of the information on which the arrest warrant was based.  (Doc.

64 at 2-4). However, as Judge Garza discussed in the PFRD, the information provided by the confidential informant was corroborated by law enforcement officers. (Doc. 62 at 1-3, 6-7). Perhaps most importantly, law enforcement observed Defendant Connors sell methamphetamine to the confidential source.

Defendant Connors also states that:

> "Region II agents were relying primarily on CI's representations of an alleged nighttime in which observation by agents was discussed and the entire interaction unrecorded, . . . and, even though they may have searched the CI before and after the alleged transaction, because the CI is so unreliable, this limited information is insufficient to support the probable cause from Search [sic] Warrant."

(Doc. 64 at 3). From this convoluted statement, the Court infers that Defendant Connors is asserting that agents could not have truly observed the transaction, and that law enforcement's search of the confidential informant, and his vehicle, before and after the controlled buy, does not provide reliable enough information on which to issue an arrest warrant. The Court disagrees. The recording reveals that the confidential source met with Defendant Connors and supports the Government's contention that drugs and money were exchanged at that meeting. (Government Exhibit 5). The search of the confidential source, and his vehicle, before and after the controlled buy, ensured that the methamphetamine was not in the confidential source's possession before he met Defendant Connors; the recording does not support an inference that he obtained the methamphetamine from anyone other than Defendant Connors. Defendant Connors' objection that the arrest warrant was not supported by probable cause is overruled.

Defendant Jones also raises an objection to "the proposed finding that the

vehicle search was otherwise justified on the basis of information extrinsic to [the arrest] warrant," however, he does not elaborate on the basis of his objection beyond that statement.  (Doc. 63 at 1).  As Judge Garza pointed out in the PFRD, Agent Martin observed, in plain view, drug paraphernalia in the vehicle.  (Doc. 62 at 7).  This fact, alone, may provide probable cause to conduct a search, but the totality of the circumstances in this case supports a finding that there was probable cause to search the vehicle.  In this case, Defendants were stopped on the basis of an arrest warrant for Defendant Connors' felony drug activity, a canine indicated that the car contained contraband, and law enforcement suspected that Defendants had driven to Phoenix to procure additional methamphetamine.  As explained in the PFRD, a warrantless search of a vehicle may be conducted when probable cause exists.  (Doc. 62 at 7) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).  Measured by an objective standard, the circumstances of this case demonstrate that a reasonable officer would have believed that an offense was being committed, *see United States v. Edwards*, 632 F.3d 633, 639 (10th Cir. 2001); therefore, the search of the vehicle was sufficiently based on probable cause and Defendant Jones' objection is overruled.

### B.  Defendant Connors' Statements to Agent Kepf

Defendant Connors objects to Judge Garza's finding that his statements made to Agent Kepf were made after he voluntarily, knowingly, and intelligently waived his *Miranda* rights and, therefore, should not be suppressed.  (Doc. 64 at 1, 4).  Defendant Connors argues that the Government has not met its burden of proof of showing that the

agents read him his *Miranda* rights before he made any admissions. (Doc. 64 at 4). However, Agent Kepf testified, unequivocally, at the evidentiary hearing that she read Defendant Connors his *Miranda* rights prior to his interview. (Tr. at 103). Defendant Connors concedes that his argument to suppress his statements to Agent Kepf is not his strongest argument, and offers very little argument to support his objection. (Doc. 64 at 6).

Although Defendant Connors quoted from this Court's decision in *United States v. Bundy*, CR 11-2432 MCA, Doc. 238, in his Requested Findings of Fact and Conclusions of Law, (Doc. 60 at 6-7), he does not explain how the circumstances in that case are analogous to those of the instant case, or otherwise provide an explanation for how that opinion is directly relevant to the argument he is asserting. That case involved a lengthy interrogation months after the incident at issue in which the defendant gave inconsistent statements, which may have been misinterpreted because the questioning agents were not completely informed about the facts of the case. Here, Defendant Connors was interviewed on the same night of the incident, did not provide inconsistent statements, and no one has alleged that the agents involved misapprehended key facts about the case. There is no indication that a recording of the interview was necessary, and no evidence to suggest that Defendant Connors' statements were made in violation of his Constitutional rights. This objection is overruled.

### C. Defendant Connors' Consent to Search His Apartment

Defendant Connors argues that the Court should consider whether the evidence found in his apartment should be suppressed because insufficient proof exists that he

"voluntarily waived his rights in statements and disclosures made to Homeland Security Agent Martin at his apartment."[2] (Doc. 64 at 5-6). In support of his claim, he asserts that Agent Martin did not re-*Mirandize* Defendant Connors, and claims, without citing to the record, that Agent Martin informed Defendant Connors that he could only attend to his dog if he consented to the search of his apartment, and that Agent Martin told Defendant Connors that he would "tear up his apartment." (Doc. 64 at 5).

In his Objections, Defendant Connors also asserts that Judge Garza erred in stating that he had not asserted a legal argument regarding the suppression of this evidence because his Motion to Suppress, (Doc. 29), Requested Findings of Fact and Conclusions of Law, (Doc. 60), and Objections raise the issue sufficiently. (Doc. 64 at 5). Defendant Connors' Motion to Suppress contained a limited recitation of the facts, law regarding how a court determines whether consent was voluntary, and a request to submit additional briefing after an evidentiary hearing. (*See* Doc. 29 at 7). At the evidentiary hearing, Judge Garza directed Defendant Connors to present his legal arguments in his Requested Findings of Fact and Conclusions of Law. (*See* Tr. at 105-06, 140). This Court has reviewed Defendant Connors' Requested Findings of Fact and Conclusions of Law and agrees with Judge Garza that he did not present any analysis of the facts of this case in light of the law. (*See* Doc. 60 at 6-7). However, the Court will now consider the issue to the extent it is presented in his Objections.

When a search is conducted pursuant to consent, it is not considered a violation of the Fourth Amendment. *United States v. Pena*, 143 F.3d 1363, 1365-66 (10th Cir. 1998)

---

[2] The Court understands this to mean that Defendant Connors is challenging the consent to search his apartment, and not any statements made while he was at his apartment, based on the rest of his briefing,

7

(citing *Sneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).   Consent that is freely and voluntarily given is valid.   *Id.* at 1366.   "Whether a defendant freely and voluntarily gave consent to a search is a question of fact and is determined from the totality of the circumstances."   *Id.*   The government has the burden of showing that consent to a warrantless search was valid.   *Id.*   To do so, the government must first present "testimony that consent was unequivocal and specific and freely and intelligently given." *Id.* (quoting *United States v. Argulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)) (internal quotations omitted).   Next, the government must show that the defendant was not coerced into granting consent.   *Id.*   To determine whether consent was the result of coercion, the court considers whether any of the following was present: "physical mistreatment, use of violence, threats, threats of violence, promises or inducements, deception or trickery."   *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994). The Court also considers the mental condition and capacity of the defendant.   *Id.*

The Government presented testimony that Defendant Connors was cooperative throughout the incident, had waived his *Miranda* rights after being fully apprised of the consequences, was not threatened or physically mistreated, and was not deceived by law enforcement.   Defendant Connors' maintains that Agent Martin coerced his consent to search his apartment in violation of his Constitutional rights.   He argues that Agent Martin's physical presence was imposing and intimidating, that Defendant Connors was told that he could only attend to his dog if he consented to the search, and that Agent Martin said he would "tear up" Defendant Connors' apartment if he did not consent.

There is no indication in the record that Agent Martin used his larger size to

8

threaten or physically mistreat Defendant Connors.  Agent Martin explained that it was his practice to speak with a defendant in a calm, respectful manner because he was more likely to receive better information with that approach.  (Tr. at 76-77).  Defendant Connors testified as to his own stature, but did not discuss how or if Agent Martin's physical presence was intimidating.  (*See* Tr. at 131-35).

Agent Martin also testified that, though Defendant Connors was a bit nervous, he had been cooperative with the agents and did not express any reservations about consenting to the search of his apartment.  (Tr. at 70-71).  In his Objections, Defendant Connors asserts that Agent Martin told him that he would "tear up his apartment" if he did not consent to the search, but Agent Martin's testimony was simply that he "probably made a statement as to if he still had keys on him, [consenting to the search] would probably be a lot easier than us breaking down the door."  (Tr. at 81).  Though law enforcement breaking down an apartment door is not an insignificant act, the statement is factual and does not rise to the level of destruction and violence that Defendant Connors seeks to imply.

Finally, Defendant Connors testified that his dog's welfare was very important to him and that he was "basically willing to do anything to get to see him.  So the officer said that if I signed the paper, he'll let me go into my apartment, that I would be able to take care of my dog and see him."  (Tr. at 134).  After providing consent, Defendant Connors was taken to his apartment, where his handcuffs were removed and he was allowed to sit with his dog.  (Government Exhibit 6).  Although these actions could be construed as an inducement to secure consent to search Defendant Connors' apartment, the Court finds

that the totality of the circumstances does not support a finding that Defendant Connors' consent was coerced. As noted above, the Government offered credible testimony that the law enforcement agents spoke respectfully and calmly to Defendant Connors and that Defendant Connors was cooperative throughout the interviews and knowingly waived his *Miranda* rights. Defendant Connors' has not pointed to any significant inconsistencies that undermine Agent Martin's testimony, nor has he truly rebutted any of the Government's evidence with anything beyond speculation. This objection is overruled.

### III. Conclusion

For the reasons explained above, the Magistrate Judge's *Proposed Findings and Recommended Disposition* is **ADOPTED** and *Mr. Connors' Motion to Suppress Stop and Fruits of an Illegal Stop and Search*, (Doc. 29); *Mr. Connors' Motion to Suppress Statement*, (Doc. 30); and *Mr. Jones' Motion for Suppression of Evidence and Incorporated Memorandum*, (Doc. 32), are **DENIED.**

**SO ORDERED** this 20th day of May, 2014.

_____
M. CHRISTINA ARMIJO
Chief United States District Judge